UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci

    v.

Chief Deputy Richard M. Young Jr.,
Sgt. Michael Bedley, and
Carroll County Sheriff's Department

Case No. 18-cv-1227-SM
Opinion No. 2021 DNH 155

**O R D E R**

Plaintiff Josephine Amatucci has sued the Carroll County Sheriff's Department ("CCSD") and two CCSD employees for alleged violations of her federal constitutional rights during an encounter at the Carroll County Attorney's Office ("CCAO") in September 2018.  Before the court is the CCSD's motion to dismiss (Doc. No. 70), brought pursuant to Fed. R. Civ. P. 12(b)(6), to which Mrs. Amatucci has objected.  See Doc. Nos. 72 (5149), 76 (5192), 77 (5198), 80 (5205).[1]  For the following reasons, the CCSD's motion is granted.

---

[1] Mrs. Amatucci assigns a four-digit number to most of the filings she makes in this Court.  As has been previously requested by Mrs. Amatucci, the court references her four-digit identification number in parentheses, after the Electronic Case Filing document number of Mrs. Amatucci's filings to assist her in identifying the documents referenced.

**Background**[2]

1.   Facts Relevant to Motion to Dismiss

On September 7, 2018, Mrs. Amatucci, who was then almost eighty years old, went to the CCAO to file a complaint against a police officer who is not a party to this lawsuit.  As there was no receptionist, Mrs. Amatucci rang a bell for service, announced the purpose of her visit, and stated that she was in fear for her safety.  Mrs. Amatucci was told by someone in that office to either send a letter or make an appointment to file her complaint.  Mrs. Amatucci then asked to make an appointment, and, receiving no response, rang the bell again.

Shortly thereafter, two CCSD deputies, apparently in response to a call from someone in the CCAO, Chief Deputy Robert Young and Sgt. Michael Bedley, arrived and asked Mrs. Amatucci to leave the office.  Mrs. Amatucci told the deputies she did not want to leave without filing her complaint, as she was concerned for her safety.  Chief Deputy Young approached Mrs. Amatucci, and she again rang the bell, and pleaded for someone to come out and "get this criminal away from [her]."  Compl. (Doc. No. 1), at 3.

---

[2] The facts set forth here are drawn from Mrs. Amatucci's complaint and other documents she has filed amending or supplementing her complaint.

Chief Deputy Young then grabbed Mrs. Amatucci's right arm, and squeezed and twisted it repeatedly, causing her to scream in pain, and escorted Mrs. Amatucci out of the office.  Mrs. Amatucci alleges that while Chief Deputy Young was squeezing and twisting her arm, and while she was screaming in pain, Sgt. Bedley did nothing to stop Young's use of force against Mrs. Amatucci, despite having the opportunity to do so.

II.  Claim Against CCSD

As relevant to the CCSD's motion, and as described more fully in the Court's February 8, 2021 Order (Doc. No. 95), Mrs. Amatucci has asserted the following claims for relief:

> 1.   Chief Deputy Young, in his individual and official capacities, violated Mrs. Amatucci's Fourth Amendment right not to be subjected to an unreasonable seizure of her person, by using excessive force against her in an objectively unreasonable manner when Mrs. Amatucci had not done anything to provoke the use of force against her;
>
> 2.   Chief Deputy Young, in his individual and official capacities, violated Mrs. Amatucci's First Amendment right to petition the government for a redress of grievances by preventing her from filing a complaint against the Chief of the Wolfeboro Police Department Chief;
>
> . . .
>
> 4.   Sgt. Bedley, in his individual capacity, violated Mrs. Amatucci's Fourteenth Amendment right to be protected from harm by failing to intervene when Chief Deputy Young engaged in excessive force against her, despite having the ability and opportunity to do so.
>
> 5A.   The CCSD is liable for the conduct of Chief Deputy Young, as set forth in Claims 1 and 2 above, based on a

theory of municipal liability under Monell v. Dep't of Soc.
Servs., 436 U.S. 658 (1978).

Feb. 8, 2021 Order (Doc. No. 95).

## Discussion

### I.   Motion to Dismiss Standard

"Dismissal pursuant to Rule 12(b)(6) is proper if – after
accepting all well-pleaded facts as true and viewing them in the
light most favorable to [Plaintiff] -- the complaint fails" to
state a claim upon which relief might be granted. Villeneuve v.
Avon Prods., Inc., 919 F.3d 40, 49 (1st Cir. 2019); see also
Ashcroft v. Iqbal, 566 U.S. 662, 678 (2009) ("[t]hreadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice" to state a claim) (citing
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  As
plaintiff is proceeding pro se in this action, the court
construes her pleadings liberally.  See Erickson v. Pardus, 551
U.S. 89, 94 (2007).

### II.  Monell Claim

In general, "[A] municipality can be found liable under [42
U.S.C.] § 1983 only where the municipality itself causes the
constitutional violation at issue." Jordan v. Town of
Waldoboro, 943 F.3d 532, 547 (1st Cir. 2019).  Thus,

municipalities and municipal agencies ordinarily cannot be held liable for the unconstitutional acts of their employees.  See Monell, 436 U.S. at 691.

"Isolated acts by government employees may also provide for municipal liability, however, as 'an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business.'" Putnam v. Reg'l Sch. Unit 50, No. 1:14-cv-00154-JAW, 2015 U.S. Dist. LEXIS 122458, at *75-76, 2015 WL 5440783, at *18 (D. Me. Sept. 15, 2015) (citing St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)). "[L]iability may not be imposed on a municipality for a single instance of misconduct by an official lacking final policymaking authority." Welch v. Ciampa, 542 F.3d 927, 942 (1st Cir. 2008). Whether an official "has this requisite level of specific policymaking authority is a matter of state law." Walden v. City of Providence, 596 F.3d 38, 56 (1st Cir. 2010).

III. <u>Analysis</u>

A.   <u>Chief Deputy Young's Title</u>

The CCSD asserts that Mrs. Amatucci's factual allegations are insufficient to demonstrate that Chief Deputy Young is a final policymaker.  In the instant motion to dismiss, the CCSD notes that Mrs. Amatucci has stated, without authority, that the

title of "Chief Deputy" suggests final policymaking authority
within the Sheriff's Department, and that she has otherwise only
made unsupported conclusory statements concerning Chief Deputy
Young's policymaking authority.  The Court agrees.  The Court
has found no relevant authority to support Mrs. Amatucci's claim
that Chief Deputy Young's title confers or suggests policymaking
authority within the meaning of Monell.

     In addition to her erroneous reliance on Chief Deputy
Young's title, Mrs. Amatucci relies on a series of unsupported
conclusory allegations regarding his authority, such as:

- "As described by the Bank's County Sheriff's Office, a
  Deputy Sheriff is a substitute for a Sheriff with the
  power to act as AN AGENT of the Sheriff in behalf of
  the Sheriff in an ACTIVE ROLE OF THE SHERIFF.  He is a
  policymaking official.  As an AGENT of the Sheriff the
  Deputy Sheriff is appointed as a SUBSTITUTE for the
  Sheriff with the POWER to act as an officer of the
  Sheriff.  Therefore, a Deputy Sheriff is a
  policymaking official."[3] Doc. No. 72, at 1.

- "Sheriff's [sic] hire deputies to assist them in
  carring [sic] out their OFFICIAL DUTIES.  Deputy
  Sheriffs are not county officers, not employees of the
  county, but are employees of the SHERIFF."  Id. at 2.

- "And Young had the POWER of the OFFICIAL DUTIES of the
  Sheriff to make this one decision, which was a
  violation of the Plaintiff's civil rights, which

_____

[3] Mrs. Amatucci cites a case which she identifies only as
"Banks County Sheriff's Office."  The Court cannot locate a case
which identifies "Banks County Sheriff's Office" as a party.
However, the Court has found a number of cases referencing the
Banks County Sheriff's Department in Georgia.  To the extent any
of those cases shed light on the policymaking authority of a
deputy sheriff, those cases would arise under Georgia law and
therefore have no bearing on this case.

automatically makes the Sheriff's Department also liable for this unlawful seizure of an Excessive Force unlawful seizure claim under the Fourth Amendment." Id.

- "Young is NOT A DEPUTY SHERIFF, he is a "CHIEF" DEPUTY SHERIFF making him a policymaking official for the Carroll County Sheriffs Dept. who is also LIABLE for the excessive force claim, the unlawful seizure of the Plaintiff under the Fourth Amendment, where under Monell when a policymaking official violates a citizen's FEDERAL CONSTITUTIONAL RIGHTS, even for one instance, the Sherif's [sic] Dept. is liable for damages."  Doc. No. 75, at 1-2.

- "CHIEF DEPUTY Young as a 'CHIEF' DEPUTY does have policymaking powers, he is not a Deputy, he is [] CHIEF [] DEPUTY, not a deputy, but a CHIEF DEPUTY. And the Carroll County Sheriff's Office is not a State Office but a county office, where there is NO IMMUNITY when a policymaking official like [] 'CHIEF' DEPUTY YOUNG violates a citizen's civil rights."  Id. at 2.

- "That as an Agent of the Sheriff defendant Chief Deputy Sheriff Young, Jr. is appointed as a SUBSTITUTE for the Sheriff with the POWER to act as an officer of the Sheriff.  Therefore, he is a policymaking official under a Monell claim.  That before beginning his OFFICIAL DUTIES, a Deputy Sheriff takes the same oath as the Sheriff."  Doc. No.  82, at 2.

Such conclusory allegations are plainly insufficient to meet Mrs. Amatucci's burden.  See Iqbal, 566 U.S. at 678 ("conclusory statements, do not suffice" to state a claim) (citation omitted).  Ultimately, upon review of all the documents Mrs. Amatucci has filed in this case, the Court finds that Mrs. Amatucci has not stated any facts to demonstrate that Chief Deputy Young has final policymaking authority at the CCSD.

B.    <u>Statutory Authority</u>

    1.    <u>General Grant of Authority to County Sheriffs</u>

Mrs. Amatucci's reliance on New Hampshire statutory law is similarly unavailing.  Under New Hampshire law, County Sheriffs are elected by the citizenry.  <u>See</u> N.H. Const. Pt. 2, Art. 71. County Sheriffs have the power to appoint deputy sheriffs and a chief deputy sheriff.  <u>See</u> N.H. Rev. Stat. Ann. ("RSA") §§ 104:3, 104:3-e.  RSA § 104:5 provides that sheriffs and their deputies may execute certain writs and act as court criers.  RSA § 104:6 grants sheriffs and deputy sheriffs the power to serve criminal or civil process throughout the state, and to enforce civil court orders.


    2.    <u>RSA §§ 104:6, 104:6-e</u>

RSA § 104:6 and RSA § 104:6-e provide that Sheriffs and Deputy Sheriffs have the same authority to conduct certain acts. Therefore, Mrs. Amatucci argues, Chief Deputy Young in fact has the same policymaking authority as the Carroll County Sheriff. With regard to policymaking authority, however, or the Sheriff's obligation or ability to delegate such authority in any area other than those specified by RSA § 104:6 and RSA § 104:6-3, New Hampshire provides no statutory or common law support for Mrs. Amatucci's position.  Accordingly, the Court finds that these

statutes do not confer policymaking authority for the Sheriff's Department on Chief Deputy Young.[4]


      3.   <u>RSA § 104:28</u>

Mrs. Amatucci cites to RSA § 104:28 to support her assertion that Chief Deputy Young is a policymaker for the CCSD, which states that a "sheriff is liable for the official conduct of his deputies respectively."  RSA § 104:28.  Mrs. Amatucci, in her responses to the defendant's motion to dismiss, and other filings, interprets that statute to mean that, in this action, the CCSD is responsible for Chief Deputy Young's actions at issue in this case.  Mrs. Amatucci, however, misunderstands the sheriff's liability as provided by that statute.  That statute provides for a sheriff's liability for a deputy's official conduct under state law.  Effectively, it is a statute codifying

---

[4] One New Hampshire statute appears to grant deputy sheriffs in New Hampshire policymaking authority when there is no Sheriff in office:

> Whenever a vacancy happens in the office of sheriff, the deputies in office shall continue to execute all official business previously committed to such sheriff, in the name of the late sheriff until another is appointed and qualified, and until they have completed all business previously entrusted to them.

RSA 104:14.  Nothing in the record before the Court suggests that, at any time relevant to this matter, there was a vacancy in the office of the CCSD Sheriff.  Accordingly, RSA § 104:14 does not provide authority for the Court to find that Chief Deputy Young was a final policymaker at the CCSD.

the respondeat superior liability of County Sheriffs in New Hampshire.

As Mrs. Amatucci has stated that, in this 42 U.S.C. § 1983 case, she is alleging that her federal constitutional rights were violated by Chief Deputy Young and Sgt. Bedley, and that she does not wish to pursue here any claims asserting her rights under state law.  See Doc. No. 80, at 4.  Respondeat superior liability does not provide a cause of action against a supervisor or employer in a case brought under § 1983.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986) ("municipality cannot be made liable by application of the doctrine of respondeat superior"); Monell, 436 U.S. at 691.[5]

C.   County Prosecutor

Mrs. Amatucci asserts that in this case, the incident giving rise to her claims occurred after a Carroll County prosecutor made a decision to call the CCSD and direct that agency to remove Mrs. Amatucci from the lobby of the CCOA. Therefore, Mrs. Amatucci contends, the individual defendants'

---

[5] In any event, any cause of action Mrs. Amatucci could assert under RSA § 104:28 would be barred by RSA § 507-B:5, which provides official immunity to a "governmental unit" with regard to a claim for personal or bodily injury, as RSA § 104:28 does not contain any exception to the grant of immunity in RSA § 507-B:5 in the circumstances presented by this action.

actions were undertaken pursuant to the decision of a final
policymaker for Carroll County, a County prosecutor, and
therefore, she has properly asserted a <u>Monell</u> claim against the
CCSD.

Assuming, without deciding, that the County prosecutor is a
final policymaking official for Carroll County, and that the act
of calling the CCSD for assistance constituted official County
policy, it does not follow that Chief Deputy Young was a final
policymaking official, or that the CCSD is liable under <u>Monell</u>
for Chief Deputy Young's actions taken at the direction of a
County prosecutor.  "Municipal liability under § 1983 attaches
where – and only where – a deliberate choice to follow a course
of action is made from among various alternatives by the
official or officials responsible for establishing final policy
with respect to the subject matter in question." Pembaur, 475
U.S. at 483.  Nothing in the record in this case suggests that
the County prosecutor, who is not a defendant to this action, is
a final decisionmaker with regard to the use of force by CCSD
deputies.  Accordingly, the actions of the County prosecuting
attorney do not render the CCSD liable for the conduct of Chief
Deputy Young.

D.   <u>Sgt. Bedley</u>

Mrs. Amatucci's claim that the CCSD is liable for Sgt. Bedley's actions assumes that Chief Deputy Young is a policymaker.  As the court has already rejected that claim, a <u>Monell</u> claim based on Sgt. Bedley's actions must also fail.

E.   <u>Official Capacity Claims</u>

The Court has construed Mrs. Amatucci's claims to include official capacity liability against Chief Deputy Young with regard to the claims identified above as Claims 1 and 2. Although the defendants have not specifically requested that the official capacity claims against Chief Deputy Young be dismissed, that claim is subject to dismissal on the same basis as the claim against the CCSD, as official capacity claims are essentially claims against the municipality.  Further, Mrs. Amatucci has stated that she did not intend for the Court to construe her claims against Chief Deputy Young as official capacity claims.  <u>See</u> Doc. No. 78, at 2-4; Doc. No. 97, at 3-4, 8.  Therefore, the Court dismisses Claims 1 and 2 to the extent they assert claims against Chief Deputy Young in his official capacity.

**Conclusion**

 For the foregoing reasons, the Court directs as follows:

1.    The defendant CCSD's motion to dismiss (Doc. No. 70) is GRANTED.  The claim identified herein as Claim 5A is dismissed, and the CCSD is dismissed from this case.

2.    Claims 1 and 2 are dismissed to the extent they assert official capacity claims against Chief Deputy Young.

 SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

September 30, 2021

cc:   Josephine Amatucci, pro se
      Dona Feeney, Esq.
      Thomas M. Closson, Esq.